IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO
_____

ARIZONA and NEW MEXICO COALITION of
COUNTIES for ECONOMIC GROWTH, et al.,

      Plaintiffs,

v.                                       Civil No. 15-00125 WJ/WPL

UNITED STATES FISH and WILDLIFE SERVICE, et al.,

      Federal Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF ARIZONA FOR CONSOLIDATION WITH RELATED CASE

THIS MATTER comes before the Court upon Defendants' Motion to Transfer Venue to the District of Arizona for Consolidation with Related Case, filed March 30, 2015 (**Doc. 15**).[1] Petitioners, including both the New Mexico Plaintiffs and the Arizona Plaintiffs, take no position on the motion. *See* Doc. 18. Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' motion is well-taken and, accordingly, is granted.

## BACKGROUND

Pursuant to 28 U.S.C. § 1404(a), Federal Defendants move to transfer this case to the District of Arizona (Tucson Division) for consolidation with an earlier case that was filed in that district which challenges the same agency action. Plaintiffs in the earlier ("first-filed") case, *Center for Biological Diversity v. Jewell*, 4:15-cv-00019-JGZ (D. Ariz.), ECF 4:15-cv-00019-JGZ, which was filed on January 16, 2015, claim that the U.S. Fish and Wildlife Service ("FWS") violated the Endangered Species Act ("ESA") and the National Environmental Policy

---

[1] Exhibits to the motion were filed separately. *See* Doc. 17.

Act ("NEPA") in revising the Federal rule governing the agency's program to reintroduce an experimental population of Mexican gray wolves into Arizona and New Mexico in accordance with Section 10(j) of the ESA (hereinafter "10(j) Rule").

Under the NEPA, federal agencies must go through a process when undertaking major federal actions that significantly affect the quality of the human environment.  Claims alleging violations of ESA or NEPA are reviewed under the Administrative Procedures Act ("APA"), 5 USC, § 706.  *See, e.g., Utah Shared Access Alliance v. Carpenter,* 463 F.3d 1125 1134 (10th Cir. 2006) (holding that NEPA claims are reviewed pursuant to the APA); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1106 n.3 ("The APA governs judicial review of agency action challenged through the ESA citizen-suit provision.").

## I.   The Revised 10(j) Rule

The rule at issue here was designed to address the conservation of endangered species as defined under the ESA (at 3).  Once a species is listed as endangered or threatened, the Secretary of the Interior may authorize the release of that population of endangered species "outside the current range of such species if it is determined that such release will further the conservation of such species."  16 U.S.C. §1539(j)(2)(A).   FWS must identify these experimental populations according to rules promulgated pursuant to the judicial review provisions of the Administrative Procedure Act ("APA"), 5 USC § 553, 50 CFR, § 17.81.  These rules designating experimental populations are referred to as "10(j) rules" and are codified at 50 CFR § 17.84.   FWS must consult with appropriate State and federal agencies as well as affected private landowners in developing and implementing experimental populations rules.   50 C.F.R. §17.84.

The Mexican wolf was initially listed under the ESA in 1976 as an endangered subspecies.  41 Fed.Reg. 17736 (Apr. 28, 1976), and in 1978, FWS listed the entire gray wolf

species in North America as either endangered or threatened.  43 Fed.Reg. 9607 (Mar. 9, 1978).

FWS has recognized the Mexican wolf as a valid biological subspecies for the purpose of

research and conservation, and initiated recovery programs for the gray wolf in three regions,

including the Southwest.   In the Southwest, a recovery plan was developed specifically for the

Mexican wolf, which focused on the establishment of a captive breeding program to ensure the

immediate survival of the subspecies followed by a reintroduction effort in the wild of a self-

sustaining population.  *See* 80 Fed.Feg. at 2514.   In 1996, FWS completed analysis pursuant to

NEPA on the specifics of a reintroduction effort.   80 Fed. Reg. at 2513.  In early 1998, pursuant

to ESA § 10(j), FWS issued a Final Rule authorizing a nonessential experimental population of

Mexican wolves in the newly designated Mexican Wolf Experimental Population Area

("MWEPA") in central Arizona and New Mexico. *See* 63 Fed. Reg. 1752 (Jan. 12, 1998).  The

1998 10(j) Rule set forth management directions and provided for limited allowable legal take of

wolves within the MWEPA.  Since 1998, FWS has reintroduced wolves into the Blue Range

Wolf Recovery Area, and at the end of 2013, there was a single wild population of at least 83

Mexican wolves.  80 Fed. Reg. 2488, 2491 (Jan. 16, 2015).[2]

The revised 2015 10(j) Rule changes the 1998 10(j) Rule (63 Fed. Reg. 1752 (January 12,

1998) in several ways, for example: (1) it enlarges the wolf population objective and provides for

a fourfold increase in the land area where Mexican wolves primarily are expected to occur and a

tenfold increase in the land area where Mexican wolves can initially be released from captivity;

(2) it allows FWS to issue permits to allow take of Mexican wolves under certain circumstances;

and (3) it modifies the conditions that determine when FWS would issue a permit to allow

livestock owners on Federal lands to take a Mexican wolf that is in the act of biting, wounding,

or killing livestock.

---

[2]  Defendants provide a detailed description of the process in their brief.  *See* Doc. 15 at 8-10.

**II.      Arizona and New Mexico Plaintiffs' Overlapping Claims**

On January 16, 2015, the day the revised 10(j) Rule was published, the Center for Biological Diversity and Defenders of Wildlife filed suit challenging the Rule in the District of Arizona.  *See* Doc. 1, 4:15-cv-00019-JGZ (D. Ariz.).   Defendants contend that the allegations contained in the Complaint in the Arizona case and the Petition in the instant case share similar legal and factual issues. The goals of the Plaintiffs in both cases are distinct, but both are using ESA and NEPA claims to achieve their goals.  Plaintiffs in the New Mexico lawsuit (comprised of both the Arizona and New Mexico Coalition for Economic Growth) generally oppose the Mexican wolf reintroduction program and want a more restrictive 10(j) Rule that would limit the wolf population and provide greater protections for the livestock industry.  Plaintiffs in the Arizona case (Center for Biological Diversity and Defenders of Wildlife), in contrast, support a far more robust Mexican wolf reintroduction program with a larger geographic area, reduced restrictions on the wolf population, and less protections for the livestock industry.  The revised 10(j) Rule takes a middle ground between these two sets of competing interests.

The Arizona Plaintiffs raise three ESA claims and four NEPA claims and seek vacatur and remand of the challenged portions of the rule.  The New Mexico Plaintiffs raise at least six NEPA claims and four ESA claims, and also request vacatur and remand of the Rule.   The Arizona Complaint ("Az. Compl.") alleges that FWS violated the ESA by failing to consider the impacts of the 10(j) Rule on Mexican wolf recovery and by failing to ensure that the 10(j) Rule provides for the species' recovery.  The New Mexico Petition ("NM Pet.") alleges that FWS excluded wolf recovery from consideration in the Environmental Impact Statement ("EIS"). Both lawsuits fault FWS for its statement that "full recovery is beyond the scope of this EIS." (Az. Compl., ¶ 102; NM Pet., ¶ 182).

A side-by-side analysis of the two lawsuits indicates that both cases indeed raise the same

legal and factual issues on the ESA claims asserted:

- challenging FWS' determination that a population cap of 300-325 wolves was appropriate:
    - Az. Compl., ¶120.: alleging FWS violated the ESA by failing to consider the population cap on the Blue Range Mexican gray wolf population in the revised rule;
    - NM Pet., ¶193: alleging that FWS violated the ESA by adopting the 10(j) Rule without regard to informed population objective, which the agency admitted is a "moving target";

- challenging FWS' decision regarding where to set northern boundary:
    - Az. Compl., ¶119: ESA violation by failing to address impact of planned limitation on wolf dispersal into needed recovery habitats north of Interstate 40;
    - NM Pet., ¶¶161-64: ESA violation by allowing experimental Mexican wolf population to "remain and occupy" area bounded on north by Interstate 40 because that area does not contain sufficient suitable habitat;

- challenging extent to which revised 10(j) Rule allows for removal of "problem" wolves:
    - Az. Compl., ¶115: violation of ESA by expansion lethal take and removal opportunities without safeguards to protect the wolf population's genetic health;
    - NM Pet.,¶195: FWS failed to take into account that it is releasing wolves that are habituated to humans which is an important factor in considering likelihood of success.

The same similarity in issues and facts also exists with regard to the NEPA claims:

- Failure to consider reasonable range of alternatives:
    - Az.Compl, ¶¶135-37: FWS violated NEPA by failing to analyze alternatives with a *greater* population target and larger expansion area;
    - NM Pet., ¶¶100-01: FWS failed to analyze alternatives that would *curtail* wolf reintroduction and minimized impacts on human health and safety as well as on economic activities of ranching and livestock production.

- Insufficient public involvement on rulemaking process:
    - Plaintiffs in both cases allege that the final EIS made substantial changes from the draft that were not disclosed to the public in the draft EIS, the public was not privy to key details it needed in order to fully evaluated the revised 10(j) Rule.

- Inconsistency of FWS' analyses with scientific information relating to Mexican wolf:
    - Az. Compl., ¶129: FWS misused a scientific paper to justify a population "cap" of 300-325 wolves;
    - NM Pet., ¶¶86-87: insufficient scientific basis for *increase* from former goal of 100 wolves.

This overview demonstrates that while the goals of the Arizona and New Mexico Plaintiffs are distinct, both challenge the revision to the 10(j) rule by using ESA and NEPA to achieve their goals, and in doing so, raise legal and factual issues that are common and central to the claims in both cases.

## DISCUSSION

Defendants contend that this case should be transferred to the District of Arizona under 28 U.S.C. § 1401(a) in the interests of justice, for consolidation with the Arizona case.[3]

## I.      Legal Standard

Section 1404(a) states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  "The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong--however brought in a court—presents issues . . . that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court."  *Cont'l Grain Co. v. The FBL*-585, 364 U.S. 19, 26 (1960).  Under this provision, the courts have broad discretion to adjudicate motions to transfer, and should decide motions to transfer on a case-by-case basis.  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515, 1516 (10th Cir. 1991).   Based on its language, an analysis under §1404(a) requires consideration on three fronts:  (1) whether the case could have been brought in the other district or division; (2) whether discretionary factors weigh in favor of

---

[3]   Consolidation is appropriate when "actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a). "Where the subject matter of the claims made in separate actions arise out of the same transaction and involve common issues of law and fact, the actions have been consolidated where the rights of the parties will be adequately protected." *Harris v.Illinois-California Express, Inc.*, 687 F.2d 1361, 1368 (10th Cir. 1982) (citations omitted).

transfer based on the convenience of parties and witnesses; and (3) whether transfer is in the interest of justice.

Courts consider the following discretionary factors when evaluating the convenience of parties and witnesses: (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1167 (10th Cir. 2010) (citing *Chrysler*, 928 F.2d at 1516)).[4]

The "interest of justice" analysis is a separate element of the transfer analysis that relates to the efficient administration of the court system. *See Van Dusen v. Barrack,* 376 U.S. 612, 626-27 (1964).   This element is concerned with both judicial efficiency and the avoidance of conflict between coordinate courts. *See Cont'l Grain Co*., 364 U.S. at 26 ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); *Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986) (the "interest of justice" factor includes "the avoidance of conflict between coordinate courts").  In some circumstances, "[t]he interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Research*

---

[4]  As Defendants note, because Plaintiffs' cases are not based on diversity jurisdiction but are grounded in questions of federal law, the *Chrysler* factors concerning conflict of laws and local law are not applicable.

*Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010) (citation

omitted).   Thus, even though generally a plaintiff's choice of forum is afforded deference, that

factor may "lose its significance entirely" where a case involves "two identical suits in distinct

venues . . . ."   626 F.3d at 979.  Defendants contend that this is such a situation, where the

interests of justice trump Plaintiffs' choice of forum.

## II.    Jurisdictional Consideration

        The only limitation on the Court's discretion to transfer a case under 28 U.S.C. § 1404(a)

is the requirement that the new forum be a "district or division where [the case] might have been

brought." 28 U.S.C. § 1404(a).  However, Defendants contend that this case easily meets the

venue test and clearly could have been brought in Arizona. Where the case "might have been

brought" is determined by 28 U.S.C. § 1391(e)(1), which provides that, in suits against agencies

of the United States, venue is proper in "any judicial district in which (A) a defendant in the

action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred .

. . or (C) the plaintiff resides" *Id.*   First, Plaintiffs base their claims on federal question

jurisdiction and the grant of jurisdiction under the ESA.  *See* NM Petition ¶ 3.  To the extent that

this Court has jurisdiction over those claims, the District of Arizona court also has subject-matter

jurisdiction.

        Second, venue in the District of Arizona is proper because it is a "judicial district in

which . . . a substantial part of the events or omissions giving rise to the claim occurred."  28

U.S.C. § 1391(e)(1).  Under this provision, venue can be appropriate in more than one district

"as long as a substantial part of the underlying events took place in those districts."  *Bartile*

*Roofs, Inc.*, 618 F.3d at 1166 (quotations omitted) (finding venue proper in Wyoming because

while insurance policies at issue were negotiated and executed outside of Wyoming, the events

giving rise to the claims in the case occurred in Wyoming).  The 10(j) Rule was authored by the

FWS New Mexico field office, *see* Fed.Reg. at 2512, but many of the facts giving rise to the

Rule occurred in the State of Arizona.  Arizona plays a role in this lawsuit because it contains

half of the revised experimental wolf population area and hosts part of the only wild population

of Mexican wolves.  80 Fed.Feg. 2488, 2491 (Jan. 16, 2015).  *See, e.g., WildEarth Guardians v.*

*U.S. Fish and Wildlife Serv*., 12-cv-3085-AP, 2013 WL 136204, at *3 (D. Colo. Jan. 9, 2013)

(uncontested that venue proper in Wyoming which was location of listed wolf population).

Third, venue would also be proper in Arizona under 28 U.S.C. § 1391(e)(1)(C), which

provides that a civil action may be brought where "the plaintiff resides if no real property is

involved in the action."  A person's place of residence under §1391(c)(1) is defined as the

district in which the person is domiciled, and an entity's residence is defined in §1391(c)(2) as its

"principle place of business."  Five of the counties making up the Arizona and New Mexico

Coalition of Counties for Economic Growth are located in Arizona (Apache, Cochise, Gila,

Graham, and Navajo), as well as three of the conservation district plaintiffs (Whitewater Draw,

Wilcox-San Simon and Pima).  NM Pet., ¶¶12, 18.  Also, Plaintiff  Southern Arizona

Cattlemen's Protective Association has its principal place of business in Green Valley, Arizona.

The only individual plaintiff owns a cattle ranch in Arivaca, Arizona and is domiciled in

Arizona.  NM Pet., ¶ 21.   Even though some Plaintiffs in this lawsuit are located in New

Mexico, several reside in the District Arizona, and so venue is equally proper there.  *See Sidney*

*Coal Co. v. Soc. Sec. Admin.*, 427 F.3d 336, 344 (6th Cir. 2005) (the residency requirement of 28

U.S.C. § 1391(e)(1)(C) "is satisfied if at least one plaintiff resides in the district in which the

action has been brought"); *East Texas Baptist Univ. v. Sebelius*, Civ. No. H–12–3009, 2013 WL

4678016, at *7 (S.D. Tex. Aug. 30, 2013) (same, collecting cases).

The Court agrees with Defendants that, because both a substantial part of the events giving rise to Plaintiffs' claims occurred in Arizona and at least one Plaintiff resides in Arizona, this case "might have been brought" in the District of Arizona, and the Court may transfer the case to that District, pursuant to 28 U.S.C. § 1404(a).

## III.   Interests of Justice Considerations

Plaintiffs' Petition is the second-filed challenge to the revised 10(j) Rule for the Mexican wolf, raising NEPA and ESA challenges that substantially overlap with the District of Arizona action.  Defendants contend that the first-filed rule favors transfer of the second case to the first-filed district for consolidation with the earlier action.  The two main considerations are principles of judicial economy and efficiency, and avoidance of the risk of potentially conflicting rulings. Defendants contend that these considerations weigh heavily in favor of transfer.

A.   First-Filed Rule

The main factors under the first-filed rule are: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of issues.  *The Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1167 (N.D. Okla. 2010). The first factor is satisfied, as Arizona case was filed on January 16, 2015, nearly a month before this action was filed on February 12, 2015.

For the second factor, the parties need not be identical and "[o]nly similarity or substantial overlap is required."  *Shannon's Rainbow, LLC v. Supernova Media, Inc.,* 683 F.Supp.2d 1261, 1278-79 (D.Utah 2010); *see Ed Tobergte Assocs., Inc. v. Zide Sport Shop of Ohio, Inc.*, 83 F. Supp. 2d 1197, 1198 (D. Kan. 1999) ("[s]ubstantial similarity in the parties and issues is sufficient to invoke application of the rule").   Thus, while the two cases are brought by different groups of plaintiffs, this is not material to the analysis.  *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc*., 544 F. Supp. 2d 949, 959 n. 6 (N.D. Cal.2008) (first-filed rule is

satisfied if some of the parties in one matter are also in the other matter, "regardless of whether there are additional unmatched parties in one or both matters").

The third, and probably most significant factor, focuses on whether there is sufficient similarity between the issues presented in the two actions. *Aurora Bank, FSB v. Universal Am. Mortg. Co*., Case No. 12-cv-02067-CMA-MJW, 2012 WL 5878197, at *4 (D. Colo. Nov. 19, 2012) (citation omitted) ("the first-to-file analysis turns primarily on the subject matter of the disputes" and finding first-filed rule did not apply to distinct disputes over different loans involving distinct facts).   As noted earlier, both this case and the District of Arizona case concern FWS's fulfillment of its obligations under NEPA and the ESA in developing the revised 10(j) Rule for the Mexican wolf recovery program; the claims in both cases implicate the same rulemaking and environmental process; and the resolution of Plaintiffs' claims in both cases will be based on judicial review of the same extensive Administrative Record.

The Court is satisfied that the three factors in the first-filed rule are met here and thus, the rule should be applied here.  Also, the divergent interests of both sets of Plaintiffs come into play by raising the real possibility of conflicting opinions and rulings on the validity of the revised 10(j) Rule.   Plaintiffs in the New Mexico case represent the livestock industry and seek to invalidate the revised 10(j) Rule, including its expansion of Mexican wolf range and population goals.  Plaintiffs representing environmental interests in the Arizona case also seek to invalidate the revised 10(j) Rule based on similar arguments, but want to see FWS do even more in expanding Mexican wolf numbers and range.  The incompatibility between these positions means that FWS may be subject to conflicting court orders or injunctions concerning whether the Mexican wolf reintroduction program is too expansive, or not expansive enough.

The Court finds that separate proceedings in these cases would not only be an unwise use of judicial resources, but would force the federal Defendants to expend resources to defend the same 10(j) Rule in two different proceedings.  The incompatibility between the goals of the Arizona and New Mexico Plaintiffs in these cases also means that FWS may be subject to conflicting court orders, or that an order in one case may undermine the court's decision in another case, based on different rulings regarding the validity of the revised 10(j) Rule.  Because the two district court cases are in different circuits, conflicting circuit court opinions could result as well, should the cases be appealed.  The first-filed rule avoids such complications and should be applied here.  *See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc*., 679 F. Supp. 2d 1287, 1297 (D. Kan. 2010) (first-filed rule provides second district court with "discretion to transfer, stay or dismiss the second case in the interest of efficiency and judicial economy").   A court should depart from the first-filed rule only in special or "extraordinary circumstances" such as forum shopping, anticipatory suits, bad faith, or inequitable conduct.  *Id*. at 1298.

B.      Transfer is Preferable to Stay

After determining that the first-filed rule applies, courts within the Tenth Circuit have the option of staying the second-filed action or transferring the case to the first-filed court.  *Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1167 (N.D. Okla. 2010).   Defendants note that other circuits, such as the Fifth Circuit, indicate that transfer is always the proper course because a second-filed court should allow a first-filed court to determine the fate of the second action. *Nash*, 724 F. Supp. 2d at 1172 (quoting *Cadle Co. v. Whataburger of Alice, Inc*., 174 F.3d 599, 606 (5th Cir. 1999)).  While some courts in the Tenth Circuit have opted for stay of the second-filed case over transfer pending a resolution of the first-filed case, none of the reasons underlying

those courts' decisions to stay the cases exist here.   For instance, no concern has been raised

over whether the District of Arizona has jurisdiction over the first-filed case, such as occurred in

*Cessna Aircraft Co.,* 348 F.2d 689, 692 (10th Cir. 1965) (granting writ to stay second-filed cases

until termination of related cases pending in another district where question of subject matter

jurisdiction over first-filed cases had been raised); *Ed Tobergte Assoc., Inc.,* 83 F.Supp.2d 1197

(D.Kan. 1999) (staying proceedings pending final termination of related proceedings in first-filed

action where defendants in first-filed action claimed the court lacked personal jurisdiction).

       Nor does any party in this case claim that "special circumstances" exist which would

make a stay preferable to a transfer.   In *Cherokee Nation v. Nash,* the plaintiffs in the second-

filed Oklahoma case argued that "special circumstances" existed which warranted a departure

from the first-filed rule, based on the sovereign immunity issue that had been raised in that case.

The District of Oklahoma court rejected the sovereign immunity question as a basis to proceed

with the pending Oklahoma case and instead deferred to the District of Columbia where the case

was first filed in order to allow that court to first determine whether the tribe's sovereign

immunity from suit warranted an exception to the first-filed rule.   *Nash,* 724 F.Supp.2d at 1171-

72 (finding that tribe had presented "no persuasive reason for ignoring the general rule of

deference to the first-filed court" and concluding that "transfer is superior to a stay").

Interestingly, the *Nash* court explained that by transferring the case rather than staying the case,

the court  was not "declining to hear the merits" or "making any rulings as to which forum is

legally proper and/or will better serve the interests of justice," but rather "simply deferring to the

first-filed forum" to determine whether the related actions and/or should proceed in the District

of Columbia, proceed simultaneously in two different forums, proceed in the second-filed court,

"or some other formulation."   In fact, the court noted that the case could eventually be

"retransferred under §1401(a)," provided that the requisites for re-transfer were satisfied.  *Id.* at 1173.

This last comment by the *Nash* court in which the court recognized that the case could be re-transferred back deserves some comment.   The plaintiff in the *Nash* case had relied on sovereign immunity to argue that the first-filed rule should *not* be followed, and the court in that case deferred to the first-filed district to decide whether the rule should be applied.  724 F.Supp.2d at 1171 ("a second-filed court may defer to the first-filed court to determine whether the second action qualifies for any 'exceptions' to the first to file rule").  This procedural wrinkle distinguishes the *Nash* case from this case; there is no equivocation concerning whether the first-filed rule should govern here and thus no basis for this Court's decision to transfer venue to be conditional or tentative based on a later ruling by the District of Arizona.  Moreover, Plaintiffs in this case do not raise any issue or concern that would suggest a stay is more appropriate than a transfer.  Instead, both the New Mexico and Arizona Plaintiffs in this case take no position and would not oppose a transfer and consolidation of the two cases.

## IV.   Other Factors

Defendants acknowledge that the other *Chrysler* facts concerning convenience are largely neutral.  Defendants also note that the first *Chrysler* factor—a plaintiff's choice of forum—is often afforded significant weight in the transfer analysis.  *Bartile Roofs, Inc*., 618 F.3d 1167.  However, in this case, that factor does not outweigh the need for closely related cases to be transferred to the same judicial district for consolidation, and is trumped by the interests of justice in adjudicating related cases in the same court.   *See, e.g., Research Automation*, 626 F.3d at 979 (holding that "where . . . the case involves two identical suits in distinct venues, this [plaintiff's choice-of-forum] factor loses its significance entirely").   As discussed above, the

judicial inefficiencies and potential for inconsistent judicial rulings that exist if these cases proceeded separately in the Districts of Arizona and New Mexico dictate the need for transfer and consolidation and overwhelm any interest Plaintiffs may have had in bringing this case in New Mexico.

Also, in this case, the Plaintiffs' choice of forum is afforded even less weight because many of them reside in Arizona. *See Bartile Roofs,* 618 F.3d at 1168 (plaintiff's choice of forum receives less deference . . . if the plaintiff does not reside in the district"). Five of the named Plaintiffs and five of the counties making up the Arizona and New Mexico Coalition of Counties for Economic Growth reside in Arizona and have no connection to New Mexico. This indicates that litigating the case in Arizona will not inconvenience Plaintiffs.

The Court agrees with Defendants that the other *Chrysler* factors do not figure into the analysis here.   There is no need to consider the convenience and accessibility of witnesses and sources of proof because there will be no witnesses or "sources" of proof. The task of the reviewing court is to apply the appropriate APA standard of review to the agency decision, based on the extensive Administrative Record in this case. *See Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743-44 (1985); *see also WildEarth Guardians v. U.S. Fish and Wildlife Serv*., 2013 WL 136204, at *5 (D. Colo. Jan. 9, 2013) (in Administrative Record review cases, consideration of convenience of witnesses is "largely irrelevant").   The *Chrysler* factor regarding difficulties that may arise from congested dockets is also not meaningful here, where the relative congestion of the two courts is comparable. *See Navajo Health Found. - Sage Mem'l Hosp., Inc. v. Burwell*, --- F. Supp. 3d ---, 2015 WL 711072, at *40 (D.N.M. Feb. 5, 2015) (comparing recent statistics on the relative congestion of courts in the District of New Mexico and the District of Arizona and determining that the equivocal statistics mean this factor is neutral).

15

V.      **Balance of Factors**

As Defendants note, the compelling considerations of judicial efficiency and avoidance of inconsistent judicial results strongly favor transfer of this case to the District of Arizona for consolidation with the *Center for Biological Diversity* case.  These considerations substantially outweigh any competing interests for keeping this case in the District of New Mexico.

As persuasive support, Defendants cite to similar cases that have been transferred and consolidated with other cases.  For example, District of New Mexico Judge Howard C. Bratton transferred a later-filed case to the District of Arizona to be consolidated with two other cases raising related environmental law challenges to federal agency efforts to protect species under the ESA.  *See New Mexico Cattle Growers Ass'n v. U.S. Fish and Wildlife Serv.*, Civ. No. 98-282-HB/JHG (D.N.M. Dec. 14, 1998) (attached as Ex. B).   This case is particularly instructive because, like the instant case, one set of plaintiffs (the New Mexico ranchers) argued that the endangered species protections were overly restrictive, while the District of Arizona plaintiffs (environmental groups) challenged the protections as not restrictive enough.   In transferring that case, the court recognized the prejudice to the federal agencies inherent in defending multiple challenges is the case were to proceed in different districts, and the Court here has the same concerns.

Defendants offer other cases in which courts transferred later-filed cases involving judicial review of the same administrative action for the sake of judicial economy and in order to avoid multiplicity of litigation.  *See, e.g., Wildearth Guardians v. U.S. Bureau of Land Management*, 922 F. Supp. 2d 51, 52-53 (D.D.C. 2013) (granting motion to transfer case from the District Court for the District of Columbia to the District of Wyoming, where similar NEPA claims were pending against the U.S. Forest Service and implicating the same BLM coal leasing

decisions);  *Cary v. Hall*, Case No. C 05-4363-VRW, 2006 WL 6198319, *1 (N.D. Cal. Nov. 30, 2006) (transferring case from Northern District of California to District of Columbia where both lawsuits challenged the same federal regulation promulgated by FWS governing three captive-bred species of antelope listed as endangered pursuant to the ESA, and noting that judicial economy favored litigating identical statutory challenges of the same regulation in the same forum).

These cases represent a few of those cited by Defendants, and they clearly support Defendants' position that the instant case should be transferred to the District of Arizona pursuant to 28 U.S.C. §1404(a).

## CONCLUSION

In sum, the Court finds and concludes that the integrity of the judicial process would best be served by transfer of this case to the District of Arizona for consolidation with the *Center for Biological Diversity* case that is pending in that district.   While the other *Chrysler* factors remain neutral, the balance of the analysis weighs heavily in favor of transferring the case.  Litigating the case here in the District of New Mexico not only would result in the wasteful duplication of judicial effort, but open the possibility of conflicting judicial orders which would work against the resolution of the pertinent questions in this case.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Transfer Venue to the District of Arizona for Consolidation with Related Case **(Doc. 15)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order, pursuant to 28 U.S.C. §1404(a);

**IT IS FURTHER ORDERED** that the Clerk of Court is hereby ordered to transfer the

above-captioned case to the District of Arizona (Tucson Division).


 

 

_____

UNITED STATES DISTRICT JUDGE